UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**ANDREA AUER,**

    **Plaintiff,**

v.                                                                Case No: 5:17-cv-411-Oc-30PRL

**FLORIDA NEUROLOGICAL CENTER, LLC**

    **Defendant.**

_____

**REPORT AND RECOMMENDATION**[1]

Plaintiff Andrea Auer sues Defendant Florida Neurological Center, LLC ("FNC") under the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) for unpaid overtime compensation. This case is before the Court on Defendant's Motion for Summary Judgment (Doc. 17), which has been referred to me for the issuance of a Report and Recommendation. Despite Defendant's submissions, issues of material fact remain as to whether Plaintiff performed off the clock work from home and whether she was exempt from the FLSA's overtime requirement under the executive or administrative exemptions when she held the position of Clinical Supervisor. Accordingly, I submit that Defendant's motion for summary judgment should be denied.

**I.   BACKGROUND**

Plaintiff initiated this action by filing a complaint (Doc. 1) against Defendant alleging that FNC failed to pay her overtime compensation in violation of the FLSA. Although not named as a

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

party, Dr. Lance Y. Kim, D.O. is the owner, chairman, and medical director of FNC. Doc. 17-1, Affidavit of Dr. Lance Y. Kim, at ¶3.

There is no dispute about the general timeline. Plaintiff was initially hired by Defendant on February 9, 2016 as a medical assistant, which was an hourly non-exempt position. On February 26, 2016, Plaintiff was promoted to the position of supervisor of FNC's clinical department. Plaintiff was still paid as an hourly employee. On June 1, 2016, Dr. Kim presented Plaintiff with the option to either (1) remain an hourly employee, paid $13.50 per hour, allowing up to 10 hours of overtime; or (2) become a salaried employee, paid $1,300 biweekly which would include 20 hours of overtime. Doc. 17-1, Exhibit 3. Plaintiff selected the latter option and became a salaried employee. She was classified as exempt. Plaintiff voluntarily quit on October 27, 2016. She was ultimately rehired on March 1, 2017, but quit again for good on May 25, 2017.

The parties paint very different pictures about Plaintiff's job responsibilities and their employment relationship. According to Dr. Kim, after Plaintiff had been hired as a medical assistant, he realized that she had experience using a medical practice software called eClinical that the practice had recently started using. Doc. 23, Deposition of Dr. Paul Kim at 8:10-10:11. Based on her experience, he offered her a promotion opportunity to clinical supervisor. *Id.* Dr. Kim claims that with the promotion, Plaintiff's role changed and that in addition to functioning as a medical assistant, she started supervising the duties of other MA's and monitoring the proper use of the new eClinical system. *Id.* at 9:9-17. Dr. Kim testified that Plaintiff helped redesign and reformat the scheduling formats in the eClinical system. *Id.* at 9:18-21. He testified that Plaintiff made suggestions about how to improve the practice, including improvements in the way the practice got authorizations for certain medications and how to better use personnel. *Id.* at 9:24-

10:4. He stated that she also attended meetings with himself and Mrs. Kim on Friday afternoons and made suggestions regarding how FNC could be improved. *Id.* at 10:5-11.

In his affidavit, Dr. Kim avers that Plaintiff "had the authority to hire or fire people and made recommendations as to FNC clinical department employees advancement, promotion or other changes in their employment status to which [he] gave great weight." Dr. Kim Affidavit at ¶22. He claims that another employee in the clinical department, Pamela Rojas was disciplined based on Plaintiff's complaints regarding her performance. *Id.* at ¶23. He also avers that Plaintiff was involved in interviewing potential candidates for the clinical department. *Id*. at ¶24. Dr. Kim claims that he had no knowledge of Plaintiff working from home until this lawsuit was filed. *Id*. at ¶17.

According to Plaintiff, shortly after she was hired, her main job became converting paper records to an electronic format in the eClinical program. Doc. 24-1, Affidavit of Andrea Auer at ¶2. And within a month, Plaintiff began performing work for FNC from her home, including converting the paper files, answering emergency phone calls, handling prior authorizations, prescription refills, Acthar research, and performing sleep studies. *Id*. at ¶3. Plaintiff repeatedly complained to Dr. Kim and Mrs. Kim about not being paid for the overtime hours she had worked, but they claimed that they were unable to pay the overtime. Doc. 22, Deposition of Andrea Auer at 22:12-23, 91:5-11. Plaintiff claims that, due to these disagreements, and in efforts to avoid his obligation to pay overtime, Dr. Kim presented Plaintiff with the option in June 2016 to either remain an hourly employee or to become a salaried employee. Auer Affidavit at ¶¶4, 5.

According to Plaintiff, her title of "Clinical Supervisor" was basically meaningless because her job responsibilities were the same as when she held the job title of medical assistant. Auer Affidavit at ¶9; Auer Deposition at 40:17-21. As clinical staff was hired, Plaintiff trained them on

how Dr. Kim wanted things done, but everything still had to go through Dr. Kim and the employees did not answer to her. Auer Deposition at 40:17-21. While Plaintiff complained about co-workers to Dr. Kim and his wife, she did not have authority to discipline, hire, fire, demote, or even evaluate clinical staff. Auer Affidavit at ¶7; Auer Deposition at 50:1-3. She claims that she did not manage anything within the business. Auer Deposition at 49:8-16. And although she met with Dr. Kim and his wife on occasion, it was generally to complain about not being paid properly, and it was never to discuss policy implementation or FNC's overall operations. Auer Affidavit at ¶6. Plaintiff avers that she had no role in scheduling employees and never had the authority to make changes to anybody's schedule, nor did she give assignments to employees. Auer Affidavit at ¶¶8, 9. Plaintiff further avers –and Mrs. Kim agreed—that Plaintiff did not have the authority to independently order supplies or materials on behalf of FNC. Auer Affidavit at ¶10; Doc. 20, Deposition of Marie Kim at 22:12-17.

On summary judgment, Defendant argues that it should not have to pay Plaintiff for overtime she allegedly worked from home while an hourly employee because it was not aware she was working from home. And Defendant argues that while Plaintiff was the Clinical Supervisor she was exempt from the FLSA's overtime requirement under the executive or administrative exemptions. For the reasons discussed below, however, Defendant's motion for summary judgment should be denied.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court reviews "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir.

2008). The Court considers the "evidence and reasonable factual inferences drawn therefrom in a light most favorable to the non-moving party." *Id.* The moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant is successful on this score, the non-moving party must then come forward with sufficient evidence to establish the existence of the elements on which she will bear the burden of proof at trial. *Id.* at 322-23. The non-moving party may not simply rest on the pleadings, but must use evidence such as affidavits, depositions, answers to interrogatories, or admissions on file to show that there is a genuine issue of material fact that remains for trial. *Id.* at 324.

### III.   DISCUSSION

The FLSA requires that employers pay employees time and one half for hours worked beyond 40 hours in a week. 29 U.S.C. § 207(a)(1). However, the FLSA exempts from each requirement an employee working in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213.

**A.  Work from Home**

Defendant seeks summary judgment on Plaintiff's claim for overtime compensation for work allegedly performed from home while she was an hourly employee. Defendant claims that Plaintiff never worked non-exempt overtime hours from home, and even if she did, Defendant should not be liable for any overtime wages because Defendant had no knowledge that the work was being performed.

However, there is evidence to suggest that Plaintiff was performing overtime work from home, and that Defendant had knowledge. Plaintiff detailed the extensive amount of work she allegedly performed from home, including answering emergency phone calls, handling prior authorizations, prescription refills, Acthar research, performing sleep studies and working on the

backlogged records that needed to be converted to electronic format. Plaintiff testified that even if her work wasn't done, she had to leave the office by 6:30 p.m. so that she would not interfere with ongoing sleep studies conducted during the evening at FNC. Auer Deposition at 25:3-17. According to Plaintiff, Defendant downloaded the eClinical program onto her private computer so that she could work from home. Auer Deposition at 21:8-19, 25:14-17. Plaintiff testified that she repeatedly complained to Dr. Kim and Mrs. Kim about not being paid for the overtime hours she had worked, but that they refused to pay for the hours. Auer Deposition at 22:12-23, 91:5-11. She further claims that Dr. Kim presented Plaintiff with the option to either remain an hourly employee or become a salaried employee so that he could avoid paying overtime. Auer Affidavit at ¶¶4, 5; Dr. Kim Affidavit, Exhibit 3.

Accordingly, there is evidence from which a jury could conclude that Plaintiff was working off the clock from home, with Defendant's knowledge. Thus, I submit that summary judgment should be denied on this ground.

### B. Exemptions

Among the available exemptions are the "executive" exemption and the "administrative" exemption. 29 U.S.C. § 213(a)(1). Defendant asserts that Plaintiff was exempt under both of those exemptions while she was the Clinical Supervisor. Defendant has the burden of proving these exemptions and the Court will narrowly construe the overtime provisions of the FLSA against the employer. *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004).

#### 1. Executive Exemption

Under the FLSA, an executive employee is defined as an employee (1) who is "compensated on a salary basis at a rate of not less than $455 per week;" (2) "[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily

recognized department or subdivision thereof; (3) [w]ho customarily and regularly directs the work of two or more employees, and; (4) [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a).

As discussed above, the parties have described Plaintiff's job responsibilities as Clinical Supervisor very differently. According to Dr. Kim, Plaintiff managed the Clinical Department and performed non-manual work that was directly related to the general business operations of FNC. Doc. 17-1, Dr. Kim Affidavit at ¶20. He claims that she managed the work of two or more clinical employees, had the authority to hire or fire people, and made recommendations (to which Dr. Kim gave great weight) as to the advancement, promotion, or discipline of clinical department employees. Dr. Kim Affidavit at ¶¶21-23. Dr. Kim claims that Pamela Rojas, another clinical department employee was disciplined based on Plaintiff's complaints regarding Ms. Rojas's performance and Plaintiff conducted interviews for clinical department applicants. Dr. Kim Affidavit at ¶¶23-24 & Exhibits 4, 5.

Plaintiff tells a very different story. She claims that her job responsibilities did not change upon her promotion to "Clinical Supervisor." Doc. 24-1, Affidavit of Andrea Auer at ¶9. She continued to perform the same tasks she did as a medical assistant, including the conversion of backlogged paper records to electronic format, processing prior authorizations, prescription refills, and answering phone calls. According to Plaintiff, despite her title, she did not have supervisory responsibilities and she did not manage anything within the business. Auer Affidavit at ¶¶4,5; Auer Deposition at 49:8-16. While she trained employees on how Dr. Kim wanted things done, everything still had to go through Dr. Kim and the employees did not answer to her. Doc. 22, Auer Deposition at 40:17-21. And although Plaintiff complained to Dr. Kim and Mrs. Kim about her

co-workers, she did not have authority to discipline, hire, fire, demote, or even evaluate clinical staff. Auer Affidavit at ¶7; Auer Deposition at 50:1-3. Plaintiff did not schedule employees or change schedules, nor did she give assignments to clinical employees. Auer Affidavit at ¶¶8-9.

Taking Plaintiff's allegations to be true, it is arguable that she was a supervisor in "name only" and that her primary duty was not the management of the Clinical Department. *See Darosa v. Florida Default Law Group, P.L.*, Case No. 8:10-cv-611-T-30AEP, 2011 WL 3715118, at *5 (M.D. Fla. Aug. 24, 2011); *Barreto v. Davie Marketplace, LLC*, 331 Fed. Appx. 672, 675 & n.1 (11th Cir. 2009) ("where an employee spends the majority of [her] time on non-exempt work and has admittedly few managerial-type obligations, there is at least a factual question as to whether the non-exempt duties are comparatively more important than the exempt duties. Such determinations of fact in the face of conflicting evidence are within the exclusive province of a jury.") There is also a material issue of fact as to whether Plaintiff had the authority to hire or fire other employees or whether her suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees was given particular weight. Accordingly, Defendant's motion for summary judgment based on the executive exemption should be denied.

2. **Administrative Exemption**

The FLSA also exempts employees working in a bona fide administrative capacity. 29 U.S.C. § 213. The Secretary of Labor defines an administrative employee as an employee: (1) who is "compensated on a salary or fee basis at a rate of not less than $455 per week;" (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) [w]hose

primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200.

Here, Defendant's motion for summary judgment against Plaintiff claiming that she was an exempt administrative employee should be denied because there is a genuine issue of material fact as to whether Plaintiff had the "primary duty" to exercise "discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3).

In general, the exercise of "discretion and independent judgment" involves "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." *Viola v. Comprehensive Health Management, Inc.,* 2010 WL 5463080, at *4 (M.D. Fla. Dec. 29, 2010). The ultimate question is whether the employee has the ability "to make an independent choice, free from immediate direction or supervision." *Rock v. Ray Anthony Intern., LLC,* 380 Fed. Appx. 875, 879 (11th Cir. 2010) (quoting *29 C.F.R. § 541.202(c)*). And while there is no requirement that the employee operate free from oversight, *see id.,* the employee's duties must involve "more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." *Id.* (quoting § 541.202(e)).

The regulation describes several factors to consider in determining whether an employee exercises the requisite level of discretion as to matters of significance, which factors include:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether

>    the employee has authority to negotiate and bind the company on
>    significant matters; whether the employee provides consultation or
>    expert advice to management; whether the employee is involved in
>    planning long- or short-term business objectives; whether the
>    employee investigates and resolves matters of significance on behalf
>    of management; and whether the employee represents the company
>    in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

Here, Defendant claims that Plaintiff exercised the requisite discretion and independent judgment. Dr. Kim points to Plaintiff's work related to the eClinical system, and notes that she supervised the conversion of documents, helped redesign and reformat the scheduling templates in the eClinical system and trained clinical staff on how to use the system. *Id.* at 9:18-23, 11:9-19. Dr. Kim also claims that Plaintiff made suggestions about FNC that were implemented, including improvements in the way the practice got authorizations for certain medications and how to better use personnel. *Id.* at 9:24-10:4. Renee Archambault, a medical assistant at FNC, testified that Plaintiff addressed patient concerns regarding the length of their wait and adjusted clinical policies to minimize patient scheduling problems; changed the way patient authorizations were gathered; and changed the way incoming faxes were handled. Doc. 21, Deposition of Renee Archambault at 16:13-25; 17:1-4, 8-11.

To the contrary, Plaintiff claims that despite her title of "Clinical Supervisor," she did not have any supervisory responsibilities and "everything still had to go through Dr. Kim." Auer Affidavit at ¶9; Auer Deposition at 40:17-21. While Plaintiff trained clinical staff on how Dr. Kim wanted things done, everything still had to go through Dr. Kim and the employees did not answer to her. Auer Deposition at 40:17-21. Plaintiff testified that she did not manage anything within the business; she did not schedule employees or give assignments, nor did she have the authority to discipline, hire, fire, demote, or evaluate clinical staff. Auer Affidavit at ¶¶7-9; Auer Deposition at 49:8-16, 50:1-3. And Plaintiff claims that although she met with Dr. Kim and his wife on

occasion, it was generally to complain about not being paid properly, and it was never to discuss policy implementation or FNC's overall operations. Auer Affidavit at ¶6. Plaintiff also avers that she had no role in implementing policies concerning safety protocols or legal compliance. Auer Affidavit at ¶9. Finally, Plaintiff asserts –and Mrs. Kim agreed—that Plaintiff did not have the authority to independently order supplies or materials on behalf of FNC. Auer Affidavit at ¶10; Doc. 20, Marie Kim Deposition at 14:10-24.

Given these allegations, a jury could find that Plaintiff did not regularly exercise discretion and independent judgment with respect to matters of significance. Consequently, Plaintiff has raised a genuine issue of material fact with respect to whether she satisfies the third element of the administrative exemption. As a result, Defendant's motion for summary judgment based on the administrative exemption should be denied.

### IV. RECOMMENDATION

Based on the foregoing, the Court submits that Defendant's motion for summary judgment (Doc. 17) should be **DENIED**.

Recommended in Ocala, Florida on November 26, 2018.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy